UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAVON LOVOWE RAMSEY,<br><br>Plaintiff,<br><br>v.<br><br>RASHEED, *et al.*,<br><br>Defendants. | Case No. 2:20-cv-02544-DAD-JDP (PC)<br><br>FINDINGS AND RECOMMENDATION |

Plaintiff, a state prisoner, proceeds in this action brought under 42 U.S.C. § 1983. He alleges that defendant Dr. Karim Rasheed, a private ophthalmologist, provided constitutionally inadequate care for an eye injury, and that defendants Gates and Dr. Singh were deliberately indifferent when they, after being informed of the inadequate care via a health care grievance, failed to correct the constitutional violation. Defendants move for summary judgment on the ground that there is no dispute of material fact as to whether they were deliberately indifferent to plaintiff's health. In the alternative, they claim qualified immunity. I recommend that defendants' motion for summary judgment be granted.

**Background**

**A. Plaintiff's Eye Injury**

On October 23, 2019, at approximately 8:00 p.m., plaintiff suffered a severe injury to his left eye following an altercation at Salinas Valley State Prison ("SVSP"). ECF No. 13 at 9. He

1

was immediately transferred to the Natividad Medical Center for emergency treatment. *Id.* at 9-10. At approximately 10:00 p.m., plaintiff was seen by an emergency room physician and then, near midnight, by non-party Dr. Del Piero, an ophthalmologist and retina specialist. ECF No. 43-1 at 71; *see also* ECF No. 43-4 at 3. Dr. Del Piero noted that plaintiff had an "extensive ruptured globe" and that the eye was "beyond salvage." ECF No. 13 at 9. He recommended that plaintiff be transferred to Dr. Rasheed at the Sani Eye Center for "[r]epair for cosmesis or enucleation" but noted that "emergent surgery was not indicated."[1] *Id.*

Since 2008, Dr. Rasheed has provided medical care on a referral basis for inmates with the California Department of Corrections and Rehabilitation ("CDCR"). ECF No. 43-4 at 2 ¶ 3. He was involved in treating plaintiff's eye injury from an initial consultation on October 24, 2019; performing surgery on October 28, 2019; and, lastly, providing care at a follow-up appointment on November 7, 2019. *Id.* at 4.

At Dr. Rasheed's initial encounter with plaintiff, the doctor examined plaintiff's left eye and agreed with Dr. Del Piero that it was "beyond salvage." ECF No. 43 at 11. Dr. Rasheed further agreed with the recommendation of either repair for cosmesis or enucleation. *Id.* He understood these options to mean that Dr. Del Piero determined there was no visual potential due to the eye injury and that it needed to be removed. ECF No. 43-4 at 3. If Dr. Rasheed had believed that there was "any hope of saving [plaintiff]'s eye," he stated that he would have referred plaintiff to a retina specialist on an emergency basis. *Id.* Instead, given the poor prognosis and "almost zero potential for saving vision in the eye," Dr. Rasheed scheduled the surgery on an "urgent"—not emergency—basis. *Id.* Moreover, while Dr. Rasheed covered plaintiff's eye to minimize extrusion of its contents, he did not prescribe pain medication; he understood that, for inmates, pain medication prescription was the responsibility of CDCR medical staff. *Id.* at 4. When plaintiff returned to CDCR custody, he was prescribed Tylenol with codeine for pain management. *See* ECF No. 43-3 at 13; ECF No. 43-1 at 89.

---

[1] Enucleation is a surgical procedure that involves removal of the entire globe and its intraocular contents with preservation of all other periorbital and orbital structures. ECF No. 43-4 at 3.

2

Dr. Rasheed performed the surgery on October 28, 2019, at the George L. Mee Memorial Hospital. ECF No. 13 at 13. He noted that plaintiff's left eye was "badly damaged," likening it to a crushed grape with its insides squeezed out. ECF No. 43-4 at 4. Because of the nature of the injury, Dr. Rasheed informed plaintiff "that visual prognosis is virtually zero." ECF No. 13 at 14. Dr. Rasheed repaired the globe and concluded that any retinal reattachment would need to occur at a subsequent surgery. ECF No. 43-4 at 4.

Dr. Rasheed last saw plaintiff at a follow-up appointment on November 7, 2019. ECF No. 13 at 15. According to Dr. Rasheed's notes, plaintiff understood "that visual prognosis is extremely poor." *Id.* Still, Dr. Rasheed offered to refer plaintiff to a retina specialist "to exhaust every last hope."[2] ECF No. 43-4 at 4. While Dr. Rasheed made the recommendation, only the prison's medical staff could arrange for plaintiff to see such a specialist. ECF No. 13 at 15; ECF No. 43-4 at 4. Following plaintiff's return to custody, an unidentified CDCR doctor told plaintiff that they were having trouble finding another ophthalmologist for the referral. ECF No. 43-3 at 16.

Plaintiff was eventually seen by an eye specialist, Dr. Judy Chen, on January 7, 2020. ECF No. 13 at 16. Dr. Chen wrote that she "discussed at length with Mr. Ramsey that due to the delay in his referral, his retina had been detached for over 2 months, with severe subsequent development of proliferative vitreoretinopathy and scar tissue." *Id.* Although Dr. Chen agreed with Dr. Rasheed that plaintiff's "overall prognosis was poor given the severity of injury," she expressed a belief that "th[e] delay in referral and subsequent surgical repair may also contribute to a poor overall visual prognosis." *Id.*

Plaintiff underwent retinal surgery twice in 2020—first in January and then in November—to treat retinal detachments with proliferative vitreoretinopathy. *Id.* at 20. In addition, he met with ophthalmologists in January, February, March, April, May, July, November, and December of 2020. ECF No. 43-1 at 29-55. Plaintiff's retina was observed to be attached, but its low intraocular pressure required treatment with medication; his visual acuity had

---

[2] Plaintiff disputes that Dr. Rasheed made this statement. *See* ECF No. 47 at 14.

increased from "no perception of light" to "light sensitive." *Id.*

### B. Plaintiff's Health Care Grievances

#### a. The First Grievance

On April 6, 2020, plaintiff filed a health care grievance complaining that the gains in his vision in the left eye were diminishing and that he needed another retinal surgery immediately. *See* ECF No. 43-2 at 11-12. Plaintiff attributed the delays to the Covid-19 pandemic but requested that his condition nonetheless be treated as an emergency so that he could retain his vision in the left eye. *See id.*

On June 1, 2020, defendant Dr. Singh determined at the institutional level that no intervention was necessary because plaintiff had recently been seen by an ophthalmologist and then by his primary care provider ("PCP"). *Id.* at 15-16. Dr. Singh further noted that the PCP developed a plan of care for plaintiff, "including medications recommended by the Ophthalmologist and a referral to the Ophthalmologist for a follow-up appointment." *Id.* at 16. On December 1, 2020, defendant Gates similarly determined, at the headquarters level, that no intervention was necessary. *See id.* at 9-10.

#### b. The Second Grievance

Plaintiff filed a second health care grievance on October 29, 2020. ECF No. 43-2 at 22-23. He again complained about the delays caused by the Covid-19 pandemic and asked that his condition be treated as an emergency. *Id.*

On December 23, 2020, defendant Dr. Singh denied plaintiff's health care grievance at the institutional level, determining that plaintiff had recently undergone retinal surgery. ECF No. 13 at 18-19. On April 1, 2021, defendant Gates denied plaintiff's health care grievance at the headquarters level, determining that intervention was unnecessary given plaintiff's recent eye surgeries and indications in the medical record that his eye was doing well with the retina attached. *Id.* at 21. Gates also noted that plaintiff had an ophthalmologist follow-up appointment scheduled in a few months. *Id.*

**Legal Standard**

    **A.**    **Summary Judgment**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computs., Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Rule 56 allows a court to grant summary adjudication, also known as partial summary judgment, when there is no genuine issue of material fact as to a claim or a portion of that claim. *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks and citation omitted). The same standards apply to both a motion for summary judgment and a motion for summary adjudication. *See* Fed. R. Civ. P. 56(a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citations to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) argument showing either that the materials cited do not establish the presence or absence of a genuine factual dispute or that the opposing party cannot produce admissible evidence to support its position. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider materials in the record not cited by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an

1 essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (citing *Celotex Corp.*, 477 U.S. at 323). The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated there to be no genuine issue of material fact and that judgment is appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

### B. Eighth Amendment Deliberate Indifference

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-prong test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)). "This second prong—defendant's response to the need was

1  deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a
2  prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* (citing
3  *McGuckin*, 974 F.2d at 1060).

4      "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060
5  (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts
6  from which the inference could be drawn that a substantial risk of serious harm exists,' but that
7  person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer v. Brennan*, 511 U.S. 825,
8  837 (1994)). "If a prison official should have been aware of the risk, but was not, then the official
9  has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (quoting *Gibson v.*
10 *Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

**Discussion**

12     Plaintiff contends that Dr. Rasheed provided constitutionally inadequate care by failing to
13 treat the condition of his eye as an emergency, thereby delaying the initial surgery by one week;
14 failing to prescribe stronger pain medication during that one-week period; and delaying a referral
15 to a retina specialist by two months. In addition, he claims that Dr. Singh and Gates failed to
16 ensure that a second retinal surgery was scheduled in an emergency manner.

17     Defendants do not dispute that plaintiff's eye injury constituted a serious medical need.
18 The dispute concerns whether they were deliberately indifferent to that need. Starting first with
19 the initial surgery delay: Dr. Del Piero, the first ophthalmologist to examine plaintiff's left eye,
20 concluded that it was "beyond salvage" and required enucleation. After examining the injury, Dr.
21 Rasheed concurred, noting that plaintiff had "no possibility of restoring any useful vision" in the
22 left eye. ECF No. 43-4 at 3. Because of this, Dr. Rasheed scheduled plaintiff's surgery on an
23 "urgent" instead of "emergent" basis.

24     In arguing that this decision was appropriate under the circumstances, defendants submit
25 the declaration of Dr. Michael Reynard, an Associate Clinical Professor of Ophthalmology at
26 UCLA School of Medicine. Dr. Reynard opines that, "[t]o a reasonable degree of medical
27 probability, Mr. Ramsey had appropriate indications for eye surgeries to treat complications
28 resulting from ocular trauma on October 23, 2019" and that "the influence of timing for ruptured

globe repair and subsequent retinal detachments on the visual prognosis of the left eye is a matter of speculation." ECF No. 43-1 at 14.  They also emphasize that three ophthalmologists—Drs. Del Piero, Rasheed, and now Reynard—all determined that plaintiff's left eye was beyond salvage.

In his opposition, plaintiff insists that Dr. Rasheed should have treated his eye injury as an emergency.  But, as the non-moving party, plaintiff bears the burden of coming forth with evidence showing that this defendant's decision not to treat his condition as an emergency was somehow deliberately indifferent.  He has not done so.[3]  Moreover, Dr. Chen's opinion that the "delay in referral [to her] and subsequent surgical repair may [have] also contributed to a poor overall visual prognosis" does not undercut defendants' position that Dr. Rasheed's decision to delay the initial surgery was not medically inappropriate.  ECF No. 47 at 15; ECF No. 43-2 at 34.  Dr. Chen's opinion appears directed at the timing of plaintiff's referral to her following the initial surgery; it does not address the timing of plaintiff's initial surgery.

Next, defendants have shown that Dr. Rasheed did not prescribe pain medication between the initial consultation and the surgery for ruptured globe repair because he understood that only CDCR medical staff can prescribe pain medication for inmates.  *See* ECF No. 43-4 at 4 ("When I [Dr. Rasheed] treat inmate patients referred by CDCR, I do not prescribe pain medication, as CDCR is responsible for pain management and provision of medication for pain, if necessary.").  And lastly, while Dr. Rasheed recommended that plaintiff be referred to a retina specialist, CDCR doctors, not Dr. Rasheed, were responsible for scheduling the referral.  *Id.*

As for Dr. Singh and Gates, the evidence shows that, despite the interruptions to his

---

[3] Plaintiff argues that, in his opinion, Dr. Rasheed's decision to delay his initial surgery was deliberately indifferent to his medical needs.  *See* ECF No. 47 at 11 ("Plaintiff's condition should have been aided the next day within 24 hours, or just been referred to an Vitreoretinal Surgeon within time constraints ('7 days to 2 months')").  Plaintiff's opinion, however, is insufficient to substantiate a disputed fact.  *Arnold v. Smith*, No. 13-CV-04456-EMC, 2016 WL 7033741, at *10 (N.D. Cal. Dec. 2, 2016) (noting that a prisoner-plaintiff's declaration could not "sustain his claim [showing deliberate indifference since] he has no medical training").  Further, plaintiff's argument that Dr. Rasheed's actions amounted to medical malpractice is irrelevant because his claim is for a violation of the Eighth Amendment.  *See Toguchi*, 391 F.3d at 1060 ("A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment.").

medical care caused by the Covid-19 pandemic, plaintiff was seen frequently by ophthalmologists in 2020 and underwent two retinal surgeries that year (January and November).[4] In concluding that intervention was unnecessary, both defendants relied on the number of these referrals, the positive indications in the record as to plaintiff's condition, and the treatment plan already put in place by plaintiff's PCP.

Dr. Chen's opinion that the delayed referral caused scar tissue to accumulate does not alter this finding because, as the undisputed facts show, that delay was attributable to CDCR's medical staff being unable to locate an ophthalmologist. Plaintiff also fails to submit any evidence establishing a dispute as to defendants Dr. Singh and Gates. Thus, while plaintiff believes that they should have intervened to schedule his second retinal surgery on an emergency basis, there is no evidence that their decision to follow the treatment plan created by plaintiff's PCP, which included regular referrals to ophthalmologists, was unacceptable under the circumstances.

Plaintiff's argument reduces to a difference of opinion with defendants, and as such it is insufficient to establish deliberate indifference. A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Toguchi*, 391 F.3d at 1058. For these reasons, I will recommend that defendants' motion for summary judgment be granted.[5]

Accordingly, it is RECOMMENDED that defendants' motion for summary, ECF No. 43, be granted.

---

[4] Defendants additionally argue that plaintiff failed to exhaust his administrative remedies against Singh and Gates, since his health care grievances did not name either of them. ECF No. 43 at 16. That argument fails because both Singh and Gates were administrative reviewers of plaintiff's grievances. *See Franklin v. Foulk*, No 2:14-cv-00057-KJM-DB, 2017 WL 784894, at *5 (E.D. Cal. Mar. 1, 2017) ("Ninth Circuit case law holds that when a prisoner is grieving an on-going medical issue, a decision at the third level of appeal serves to exhaust claims regarding that medical issue, including claims against individuals who only acted as an administrative appellate reviewer."); *Damian v. Breen*, No. 2:18-CV-00412-MWF-MAA, 2020 WL 7496314, at *8 (C.D. Cal. Nov. 13, 2020) (finding that the prisoner-plaintiff exhausted his administrative remedies with respect to the administrative reviewers because "they were plainly on notice" of his the allegations in his grievance).

[5] Because I find that plaintiff has not shown that defendants violated his Eighth Amendment rights, I need not address defendants' qualified immunity argument.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   July 17, 2023

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE